# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

DENNIS L. WILLIAMS,

      Plaintiff,

vs.                                No. CIV-06-0569 JB/RLP

WESTERN LAUNDRY EQUIPMENT LLC
and ANTHONY BYRNE,

      Defendants.

_____

BYRNE & WILLIAMS, LLC, a New Mexico
limited liability company,

      Third-Party Plaintiff,

vs.

DENNIS L. WILLIAMS,

      Third-Party Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the Plaintiff's Rule 12(b)(1) Motion to Dismiss

Defendants' Counterclaim and Third Party Complaint of "Byrne & Williams, LLC," filed September

1, 2006 (Doc. 9)("Motion to Dismiss"). The Court held a hearing on this motion on November 17,

2006. The primary issues that the written motion raised are: (i) whether the Counterclaims filed by

Defendant Anthony Byrne are compulsory or permissive; (ii) whether the Court should allow an

unnamed defendant, Byrne & Williams, LLC ("B&W"), to file a Third-Party Complaint; and (iii)

whether, if the Court dismisses the Third-Party Complaint, it should allow B&W to file a Complaint

in Intervention. Because the Court concludes that the Counterclaim is closely related to the claims

in the Complaint, and that the claims that constitute the Counterclaim are compulsory, the Court will deny the motion to dismiss the Counterclaim.  Because the Defendants have voluntarily withdrawn B&W's Third Party Complaint, the motion to dismiss the Third Party Complaint is moot, and the Court will deny B&W's request to file a Complaint in Intervention.

## FACTUAL BACKGROUND

Byrne is the sole shareholder of co-Defendant Western Laundry Equipment LLC ("Western Laundry").  See Complaint for Violation of 26 U.S.C. § 7434 and for Fraud ¶ 3, at 1, filed June 27, 2006 (Doc. 1)("Complaint"); Answer to Complaint for Violation of 26 U.S.C. § 7434 and for Fraud; Counterclaims by Anthony Byrne ¶ 1, at 1, filed August 14, 2006 (Doc. 3)("Answer").  On or about November 1, 2001, Byrne and Plaintiff Dennis Williams entered into a partnership, B&W,  for the purpose of engaging in the business of coin-operated laundromats.  See Answer ¶ 6, at 4.  Williams represents, on information and belief, that B&W is not a New Mexico corporation.  See Memorandum in Support of Plaintiff's Rule 12(b)(1) Motion to Dismiss Defendants' Counterclaim and Third-Party Complaint of "Byrne & Williams, LLC" at 2 n. 1, filed September 1, 2006 (Doc. 10)("Motion to Dismiss Memorandum").

The New Mexico Public Regulation Commission website shows no corporation with the name of Byrne & Willliams, LLC.  See Motion to Dismiss Memorandum, Exhibit 1 (search available at http://www.nmprc.state.nm.us/cii.htm).  Exhibit A to the Third Party Complaint shows that Byrne & Williams, LLC is a partnership and not a corporate entity.  See Third Party Complaint, Exhibit A, Byrne and Williams Partnership Agreement, filed August 14, 2006 (Doc. 4)("Partnership Agreement").  Byrne maintains that he and Williams treated the partnership agreement "as the operating agreement of the limited liability company, Byrne[] & Williams, LLC."  Answer ¶ 7, at 5.

Byrne contends that, subsequent to the parties making their initial capital contributions to B&W, Williams failed to make additional contributions to the company in the manner the partnership agreement required.  See Answer ¶ 9, at 5; Partnership Agreement, Part V(C).  Byrne represents that, in 2005, he withheld money that Williams earned as payment for the alleged debt to B&W.  See Answer ¶ 12, at 5.  Williams alleges Western Laundry issued him a 2005 Form 1099-MISC that reflected income in the amount of $182,065.50, but only paid him $106,578.04 during that year.  See Complaint ¶¶ 8, 10, at 2.

## PROCEDURAL BACKGROUND

Williams has invoked the Court's jurisdiction over his dispute with the Defendants.  See Complaint ¶ 5, at 1-2 (alleging Williams' cause of action arises under 26 U.S.C. § 7434).  Williams filed his Complaint and this lawsuit on June 27, 2006, to recover civil damages for the Defendants' alleged willful issuance of a fraudulent 1099-MISC to him and for the Defendants' willful failure to issue a corrected form.  See id. ¶¶ 11-12 at 2.  Williams' suit is styled as an action under 26 U.S.C. § 7434, the Internal Revenue Code provision that grants individuals a cause of action for civil damages caused by another person's fraudulent filing of information returns, see id. ¶¶ 13-15, at 3, and also raises a state-law fraud claim, see id. ¶¶ 16-19, at 3-4.  Williams' Complaint does not name B&W as a party to the lawsuit.

The Defendants filed an Answer to Williams' Complaint on August 14, 2006.  The Defendants assert that Williams received the benefit of the money withheld for capitalization of B&W and that $75,487.46 was used to extinguish Williams' debt to B&W.  See Answer ¶ 6, at 1-2.  The Answer raises an offset as an affirmative defense.  See id. ¶ D, at 3.

Byrne includes three claims against Williams in the Counterclaim in the Defendants' Answer.

The three claims in the Counterclaim do not invoke any federal causes of action, but rather encompass three state-law causes of action for: (i) breach of contract, fiduciary duties, and conflict of interest; (ii) fraud; and (iii) prima facie tort.[1]  See id. ¶¶ 5-28, at 4-8.  Byrne asserts the Court has jurisdiction over the claims in his Counterclaim, because Williams has "raise[d] a federal question under 26 U.S.C. § 7434, and jurisdiction may therefore be proper under 28 U.S.C. § 1331."  Id. ¶ 4, at 4.  Byrne requests the Court award him compensatory and punitive damages, attorneys' fees, costs, and other damages the Court may find proper.  See id. at 8.

All three counts of the Counterclaim relate to an alleged breach of the partnership agreement between Williams and Byrne.  The breach of contract count is based on Byrne's assertion that Williams breached the partnership agreement by selling, in his personal capacity, B&W assets to Yonggoo Kang without Byrne's or B&W's consent, creating a conflict of interest between Williams and B&W, in violation of Williams' fiduciary duty to B&W.  See id. ¶ 13, at 5-6.  Byrne's fraud claim alleges that Williams executed this agreement with Kang in secret, and that this fraudulently executed agreement has damaged Byrne and B&W.  See id. ¶¶ 18, 21, at 6-7.  Finally, Byrne raises a claim in the alternative for prima facie tort, alleging that Williams' conduct was intentional, that Williams knew his actions would damage Byrne and B&W, and that his actions were the proximate cause of harm to Byrne and B&W.  See id. ¶¶ 24-26, at 7.

The Defendants also filed, contemporaneously with and in the Answer and Counterclaim to Williams' Complaint, a Third Party Complaint on behalf of B&W against Williams .  See Third Party Complaint, filed August 14, 2006 (Doc. 4).  The Defendants concede that the allegations in the Third Party Complaint parroted or matched nearly verbatim those in Byrne's Counterclaim, because the

---

[1]Byrne's prima facie tort claim is raised in the alternative.

claims of Byrne and B&W are identical against Williams.  <u>See</u> Response to Plaintiff's Rule 12(b)(1) Motion to Dismiss Defendant's Counterclaim and Third-Party Complaint at 2, filed October 4, 2006 (Doc. 18)("Response").

In his written motion, Williams requested, under rule 12 of the Federal Rules of Civil Procedure, that the Court dismiss the Counterclaim that Byrne raises in the Defendants' Answer to Williams' Complaint and the Third Party Complaint that B&W asserted .  <u>See</u> Motion to Dismiss at 3.  In their written response, the Defendants opposed the dismissal of any claims and, alternatively, requested leave to amend their pleadings.  <u>See</u> Response at 10.  On October 18, 2006, Williams filed, pursuant to rule 7.3(b) of the Court's local rules, a Notice of Completion of Briefing, indicating that the motion is ready for decision.  <u>See</u> Notice of Completion of Briefing on Plaintiff's Rule 12(b)(1) Motion to Dismiss Defendants' Counterclaim and Third Party Complaint, filed October 18, 2006 (Doc. 20).

At the commencement of the November 17, 2006 hearing, B&W filed in open court a notice that it was voluntarily dismissing its Third Party Complaint.  <u>See</u> Voluntary Dismissal of Third Party Complaint, filed November 17, 2006 (Doc. 22); Transcript at 2:23 - 3:2 (Budagher)(taken November 17, 2006).[2]

## <u>LAW REGARDING SUPPLEMENTAL JURISDICTION</u>

### 1.    <u>Supplemental Jurisdiction.</u>

It is a fundamental precept of American law that the federal courts are "courts of limited jurisdiction." <u>Exxon Mobil Corp. v. Allapattah Servs., Inc.</u>, 125 S. Ct. 2611, 2616 (2005).  Federal

---

[2]The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

courts "possess only that power authorized by [the] Constitution and statute."  Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).  Among the powers that Congress has bestowed upon the courts is the power to hear controversies arising under federal law -- federal question jurisdiction -- and controversies arising between citizens of different states -- diversity jurisdiction.  See 28 U.S.C. §§ 1331 and 1332.

Although a statutory basis is necessary for federal courts to exercise jurisdiction over a controversy, "it is well established -- in certain classes of cases -- that, once a court has original jurisdiction over some claims in the action, it may exercise supplemental jurisdiction over additional claims that are part of the same case or controversy."  Exxon Mobil Corp. v. Allapattah Servs., Inc., 125 S. Ct. at 2617.  The Supreme Court of the United States has long subscribed to the concept of supplemental jurisdiction recognized in two common-law doctrines -- pendent and ancillary jurisdiction.  Federal courts may exercise pendent jurisdiction over state-law claims when "state and federal claims . . . derive from a common nucleus of operative fact."  United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966).  Ancillary jurisdiction gives federal courts the flexibility to hear a cause of action even after the introduction of third parties whose insertion into the litigation is not supported by any independent grounds for federal jurisdiction, when those parties share a common interest in the outcome of the litigation and are logical participants in it.  See Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 375 n.18 (1978).

In 1988, Chief Justice William H. Rehnquist created the Federal Courts Study Committee to analyze the federal court system and to recommend reforms.  See 16 Moore's Federal Practice, § 106.04[5] (Matthew Bender 3d ed.).  In response to the Committee's findings regarding "pendent" and "ancillary" jurisdiction, Congress codified the application of the two doctrines when it passed the

Judicial Improvements Act of 1990:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a).  In enacting 28 U.S.C. § 1367, Congress conferred upon federal district courts "supplemental forms of jurisdiction . . . [that] enable them to take full advantage of the rules on claim and party joinder to deal economically -- in single rather than multiple litigation -- with matters arising from the same transaction or occurrence."  Report of the Federal Courts Study Committee, Part II.2.B.2.b. (April 2, 1990), reprinted in 22 Conn. L. Rev. 733, 787 (1990).

## 2.    **District Court Discretion.**

The United States Court of Appeals for the Tenth Circuit has followed the Supreme Court's lead in classifying supplemental jurisdiction not as a litigant's right, but as a matter of judicial discretion.  See Estate of Harshman v. Jackson Hole Mountain Resort Corp., 379 F.3d 1161, 1165 (10th Cir. 2004)(citing City of Chi. v. Int'l Coll. of Surgeons, 522 U.S. 156, 173 (1997)).  In circumstances where the supplemental jurisdiction statute may support supplemental jurisdiction, the district court retains discretion to decline to exercise that jurisdiction.  The traditional analysis, based on the Supreme Court's opinion in United Mine Workers v. Gibbs, compelled courts to consider "judicial economy, convenience and fairness to litigants" when deciding whether to exercise supplemental jurisdiction.  383 U.S. at 726.  Similarly, Congress' supplemental jurisdiction statute enumerates four factors that the court should consider:

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  In applying these factors, district courts should seek to exercise supplemental jurisdiction in an effort to "vindicate values of economy, convenience, fairness, and comity."  Estate of Harshman v. Jackson Hole Mountain Resort Corp., 379 F.3d at 1164.

Numerous courts have acknowledged that 28 U.S.C. § 1367(c) necessarily changed the district courts' supplemental jurisdiction discretion analysis, and that, unless one of the conditions of 28 U.S.C. § 1367(c) exists, courts are not free to decline jurisdiction.  See Itar-Tass Russian News Agency v. Russian Kurier, Inc., 140 F.3d 442, 447 (2d Cir. 1998)("Section 1367 has indeed altered Gibbs' discretionary analysis."); McLaurin v. Prater, 30 F.3d 982, 985 (8th Cir. 1994)("The statute plainly allows the district court to reject jurisdiction over supplemental claims only in the four instances described therein."); Executive Software N. Am. v. U.S. Dist. Court, 24 F.3d 1545, 1557 (9th Cir. 1994)("By codifying preexisting applications of Gibbs in subsections (c)(1)-(3), however, it is clear that Congress intended the exercise of discretion to be triggered by the court's identification of a factual predicate that corresponds to one of the section 1367(c) categories."); Palmer v. Hosp. Auth., 22 F.3d 1559, 1569 (11th Cir. 1994)("[S]upplemental jurisdiction must be exercised in the absence of any of the four factors of section 1367(c).").  At least one other district court in the Tenth Circuit has reached the same conclusion.  See Gudenkauf v. Stauffer Commc'ns, Inc., 896 F. Supp. 1082, 1084 (D. Kan. 1995)("[A]ny exercise of discretion declining jurisdiction over pendent claims

or parties cannot occur until 'triggered' by the existence of one of the four conditions enumerated.").

## LAW REGARDING COUNTERCLAIMS AND THIRD-PARTY COMPLAINTS

### 1.      Rule 13.

Subject to restrictions that the Federal Rules of Civil Procedure and the limits of federal court jurisdiction impose, a defendant may bring a counterclaim in a pending action, and assert any and all claims that he has against the plaintiff.  See Fed. R. Civ. P. 13.  Under rule 13, counterclaims are categorized as either being "compulsory" or "permissive."  Fed. R. Civ. P. 13(a), (b).  A compulsory counterclaim is one that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim."  Fed. R. Civ. P. 13(a).  See Arch Mineral Corp. v. Lujan, 911 F. 2d 408, 412 (10th Cir. 1990).  A compulsory counterclaim, as distinguished from a permissive counterclaim, must be pled or is barred.  See Baker v. Gold Seal Liquors, Inc., 417 U.S. 467, 469 n.1 (1974); Zimmerman v. First Fed. Sav. & Loan Ass'n, 848 F.2d 1047, 1053 (10th Cir. 1988).

A counterclaim is compulsory if: (i) it involves the same issues of law and fact as the principal claim; (ii) res judicata would bar the defendant from bringing a subsequent suit on the same claim; (iii) it involves the same evidence as the principal claim; and (iv) there is a logical relationship between the principal claim and the counterclaim.  See FDIC v. Hulsey, 22 F.3d 1472, 1487 (10th Cir. 1994). In recognition of the principles of judicial economy that support rule 13, a number of courts, including the Tenth Circuit, give special weight to the "same evidence" and "claim preclusion" factors.  See Jones v. Ford Motor Credit Co., 358 F.3d 205, 209-10 (2d Cir. 2004)(classifying counterclaim as permissive because the essential facts needed to prove the principal claim and the counterclaim were not so similar that combining the lawsuits would yield judicial efficiency); FDIC v. Hulsey, 22 F.3d at 1487 (finding counterclaims compulsory because res judicata would bar the defendant from

bringing a subsequent claim arising out of the same creditor/debtor relationship and any evidence presented would necessarily encompass the parties' entire relationship); Colonial Penn Life Ins. Co. v. Hallmark Ins. Adm'rs, Inc., 31 F.3d 445, 448 (7th Cir. 1994)(describing the United States Court of Appeals for the Seventh Circuit's test for whether a counterclaim is compulsory as asking "little more than whether the plaintiff's claims would be barred by res judicata"); Painter v. Harvey, 863 F.2d 329, 332 (4th Cir. 1988)("Where, as here, the same evidence will support or refute both the claim and counterclaim, the counterclaim will almost always be compulsory.").  In addition, claims in recoupment -- those seeking "an offset based upon a claim for relief arising from the same transaction as the plaintiff's claim or cause of action, strictly for the purpose of abatement or reduction of such claim" -- are by definition compulsory counterclaims.  Styler v. Jean Bob Inc. (In re Concept Clubs, Inc.), 154 B.R. 581, 586 n.3 (D. Utah 1993).   See FDIC v. Hulsey, 22 F.3d at 1487 (designating tort-based counterclaims against FDIC as compulsory claims for recoupment in loan foreclosure action).    A compulsory counterclaim is  within the court's supplemental jurisdiction and does not require an independent basis of subject matter jurisdiction.  See Unique Concepts, Inc. v. Manuel, 930 F.2d 573, 547 (7th Cir. 1991)("A federal court has supplemental jurisdiction over compulsory counterclaims."); Naranjo v. County of Rio Arriba, 862 F. Supp. 328, 334 (D.N.M. 1994)(Conway, J.); 28 U.S.C. § 1367(a).

Rule 13 also permits a party to raise as a counterclaim "any claim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(b).  The permissive counterclaim rule, therefore, allows the court to dispose of all the claims between the parties in one proceeding, irrespective whether the claims all arise from the same transaction or occurrence.  See Baker v. Gold Seal Liquors, Inc., 417 U.S. at

469 n.1.  Because permissive counterclaims do not arise from the same transaction or occurrence as

the main claim, however, they generally do not fall within the court's supplemental jurisdiction and

thus require an independent basis for federal jurisdiction.  See NLRB ex rel. Int'l Union of Elec.,

Radio, & Mach. Workers v. Dutch Boy, Inc., 606 F.2d 929, 932 (10th Cir. 1979).

Unlike recoupment claims, which arise from the same transaction as the principal claim,

counterclaims for setoff "provide[] the basis for a permissive counterclaim because setoff, by

definition, does not arise from the same transaction as the original claim."  Styler v. Jean Bob Inc. (In

re Concept Clubs, Inc.), 154 B.R. at 587.  Before the enactment of the supplemental jurisdiction

statute, 28 U.S.C. § 1367, some courts had taken the view that a counterclaim for setoff is an

exception to the general rule that permissive counterclaims require an independent basis for federal

jurisdiction.  See United States ex rel. D'Agostino Excavators, Inc. v. Heyward-Robinson Co., 430

F.2d 1077, 1081 n.1 (2d Cir. 1970)("Where the permissive counterclaim is in the nature of a set-off

interposed merely to defeat or reduce the opposing party's claim and does not seek affirmative relief,

no independent jurisdictional grounds are required.");  Fraser v. Astra Steamship Corp., 18 F.R.D.

240, 242 (S.D.N.Y. 1955).  Even advocates of this exception to the general rule, however,

acknowledged that the exception was Professor Moore's "creation," not statutory or caselaw, and

that the exception "carries the seeds of destruction of the supposed general rule."  United States ex

rel. D'Agostino Excavators, Inc. v. Heyward-Robinson Co., 430 F.2d 1077, 1088 (Friendly, J.,

concurring). Cf. Abromovage v. United Mine Workers, 726 F.2d 972, 988 (3d Cir. 1984)(describing

the setoff exception as "apparently invented by Professore Moore" and refusing to rely on the

exception in finding jurisdiction over defendant's counterclaim styled as a setoff); William A. Fletcher,

"Common Nucleus of Operative Fact" and Defensive Set-Off: Beyond the Gibbs Test, 74 Ind. L. J.

171, 171-72 (1998)(noting that there are doubts as to the defensive set-off's legitimacy in federal courts).

Since the passage of 28 U.S.C. § 1367, however, at least one Circuit Court of Appeals has considered the matter and determined that "jurisdiction in such a case is possible but not automatic, because the jurisdictional issue is governed by [the statute]." Lefkovitz v. Wagner, 395 F.3d 773, 782 (7th Cir. 2005). In an opinion authored by the Honorable Richard A. Posner, United States Circuit Judge, the Seventh Circuit held that, because "the exercise of supplemental jurisdiction [is] discretionary with the district court . . . , it would be up to the [district] judge, subject only to light appellate review, to determine whether to allow the setoff to be litigated before him." Id.

   2.   **Rule 14.**

Although a plaintiff is generally free to select the party structure of his litigation, "a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff." Fed. R. Civ. P. 14(a). See Stafford v. Hammond Mach., Inc., No. 4:96-CV-149, 1997 U.S. Dist. LEXIS 21294, *3 (W.D. Mich. Dec. 16, 1997)("[A]lthough the Federal Rules of Civil Procedure generally repose in the plaintiff great discretion in selecting the party structure of litigation, this discretion may be overridden in narrow circumstances."). Rule 14's plain language, however, as well as the rule's procedural requirements, indicate that only the parties who are defendants in the lawsuit may initiate a third-party lawsuit pursuant to rule 14. See Fed. R. Civ. P. 14(b) (allowing the plaintiff to bring a third-party claim once a counterclaim is asserted against the plaintiff).

An impleader claim is proper only if it satisfies three requirements. First, the third-party

defendant must be liable to the third-party plaintiff; that a third-party defendant might be directly liable to the plaintiff is not grounds for impleader.  See Ocasek v. Hegglund, 673 F. Supp. 1084, 1088 (D. Wyo. 1987).   Second, the third-party defendant's alleged liability must be to the third-party plaintiff for the losses the third-party plaintiff sustained as a result of the plaintiff's claim.  See id. (holding third-party complaint was not proper under rule 14 when third-party defendant's liability to third-party plaintiff was not dependent on defendant's liability to the plaintiff).   Third, the third-party defendant's liability must be derivative of the third-party plaintiff's liability.  In other words, "[t]he mere fact that the alleged third party claim arises from the same transaction or set of facts as the original claim is not enough."  Id. (quoting 7 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 1446 (1986)).  See Admin. Comm. of the Wal-Mart Assocs. Health & Welfare Plan v. Willard, 216 F.R.D. 511,  513-14 (D. Kan. 2003).

In addition to satisfying the procedural requirements of rule 14, a third-party plaintiff must demonstrate that the court has subject-matter jurisdiction over his third-party complaint.  See United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 n.13 (1966)(noting the federal rules do not expand the jurisdiction of the federal courts); Fed. R. Civ. P. 82 ("These rules shall not be construed to extend or limit the jurisdiction of the United States district courts or the venue of actions therein."); 3 Moore's Federal Practice, § 14.41[1].  Even when there is no independent grounds for federal jurisdiction over a third-party complaint, however, a federal court might still have supplemental jurisdiction over the third-party action that it may exercise at its discretion.  See King Fisher Marine Serv., Inc. v. 21st Phoenix Corp., 893 F.2d 1155, 1171 (10th Cir. 1990)(noting that district court had ancillary jurisdiction over state-law indemnity claim between non-diverse third-party litigants).

### 3.    Rule 18.

The Federal Rules of Civil Procedure encourage the joinder of as many claims, parties, and remedies as possible to entertain the broadest, most efficient action consistent with fairness to the parties.  See United Mine Workers of Am. v. Gibbs, 383 U.S. at 724.  Accordingly, pursuant to rule 18, "[a] party asserting a claim to relief as an original claim, counterclaim, crossclaim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party."  Fed. R. Civ. P. 18.   Consequently, the misjoinder of claims against proper defendants is rarely, if even, possible.  See Lehman v. Revolution Portfolio LLC, 166 F.3d 389, 394 (1st Cir. 1999)("Given Rule 18(a)'s broad expanse, misjoinder of claims has become an anachronism in federal civil practice.").

Although rule 18 allows for liberal joinder of claims, the rule addresses only the procedural propriety of such joinder and does not confer subject-matter jurisdiction to the federal courts over joined claims.  See United Mine Workers of Am. v. Gibbs, 383 U.S. at 725 n.13; Fed. R. Civ. P. 82. Thus, a court may decide claims joined under rule 18(a) only if independent jurisdiction and venue requirements are satisfied.  See King Fisher Marine Serv., Inc. v. 21st Phoenix Corp., 893 F.2d at 1158 n.2.

### 4.    Rule 24.

Rule 24(a) grants a third-party the right to intervene in an existing action when the third-party "claims an interest relating to the property or transaction which is the subject of the action."  Fed. R. Civ. P. 24(a)(2).  A third-party plaintiff may invoke rule 24(a) when the interest it seeks to protect is "direct, substantial and legally protectable."  Coalition of Ariz./N.M. Counties for Stable Econ. Growth v. Dep't of the Interior, 100 F.3d 837, 840 (10th Cir. 1996).  The right is not unconditional,

however, and a third party wishing to intervene must show that: (i) its application is timely; (ii) its interest relates to the property or transaction that is the subject of the primary action; (iii) the disposition of the action without the third-party's participation may impair its ability to subsequently protect its interest; and (iv) existing parties do not adequately represent its interest.  See Utahns for Better Transp. v U.S. Dep't of Transp., 295 F.3d 1111, 1115 (10th Cir. 2002); Ute Distrib. Corp. v. Norton, 43 Fed. Appx. 272, 275 (10th Cir. 2002).

Pursuant to rule 24(b), a third-party may permissively intervene, at the court's discretion, when its "claim or defense and the main action have a question of law or fact in common."  Fed. R. Civ. P. 24(b)(2).  Allowing a party to intervene under rule 24(b) is a matter within the district court's sound discretion.  See United Nuclear Corp. v. Cranford Ins. Co., 905 F.2d 1424, 1427 (10th Cir. 1990).  In determining whether to permit a third-party to intervene under rule 24(b), the court must consider whether "the intervention would unduly delay or prejudice the adjudication of the rights of the original parties."  Nieto v. Kapoor, 61 F. Supp. 2d 1177, 1195 (D.N.M. 1999)(Vazquez, J.)(quoting Fed. R. Civ. P. 24(b)(2)).  Although not listed as a factor in the text of rule 24(b), the Tenth Circuit has indicated that whether existing parties are adequately representing the third party's interest is a relevant factor in evaluating an application for permissive joinder.  See Arney v. Finney, 967 F.2d 418, 421 (10th Cir. 1992).

Courts had traditionally held that, when intervention was afforded as a matter of right, no independent jurisdictional basis was needed for the district court to have subject-matter jurisdiction over the third-party's claim.  See Int'l Paper Co. v. Inhabitants of the Town of Jay, 887 F.2d 338, 346 (1st Cir.1989).  Conversely, permissive intervention required the district court to have independent jurisdiction over the intervenor's claims  Sec. Ins. Co. v. Schipporeit, 69 F.3d 1377, 1381 (7th Cir.

-15-

1995).  The Tenth Circuit has recently held that, consistent with 28 U.S.C. § 1367(a), when a district

court has subject-matter jurisdiction over a principal claim pursuant to 28 U.S.C. § 1331, the court

"may exercise supplemental jurisdiction over intervention claims that are sufficiently related to the

main claim over which the court has federal question jurisdiction."  Grace United Methodist Church

v. City of Cheyenne, 451 F.3d 643, 672 (10th Cir. 2006).

## NEW MEXICO PARTNERSHIP LAW

The Supreme Court of New Mexico "has recognized a fiduciary duty existing between

partners in a partnership."  GCM, Inc. v. Ky. Cent. Life Ins. Co., 1997-NMSC-052, ¶ 21, 947 P.2d

143, 149.  See Fate v. Owens, 2001-NMCA-040, ¶32, 27 P.3d 990, 999.  Accordingly, an individual

partner "has the right to have his co-partner exercise good faith in all partnership matters . . . [and]

a partner is not allowed to gain any advantage over a co-partner by fraud, misrepresentation or

concealment."  Levy v. Disharoon, 106 N.M. 699, 704, 749 P.2d 84, 89 (1988).

Under New Mexico law, a partnership is a distinct legal entity and is empowered to sue or

to be sued in the name of the partnership.  See  First Nat'l Bank v. Sanchez, 112 N.M. 317, 325, 815

P.2d 613, 621 (1991); N.M. Stat. Ann. § 54-1A-307.  The general rule, however, is that "partners

cannot sue each other at law for acts relating to the partnership unless there is an accounting, prior

settlement, or adjustment of the partnership affairs."  Levy v. Disharoon, 106 N.M. at 704, 749 P.2d

at 89.  Although partnerships must act through their partners, and partners are therefore agents of

a partnership whose acts bind the partnership, "a partner may not sue alone on a cause of action

belonging to a partnership; instead, the action must be brought in the names of all the partners."

Daniels Ins., Inc.  v. Daon Corp., 106 N.M. 328, 331, 742 P.2d 540, 543 (Ct. App. 1987).  See

GCM, Inc. v. Ky. Cent. Life Ins. Co., 1997-NMSC-052, ¶ 30, 947 P.2d at 152 ("In order to assign

the right to sue belonging to a partnership, all partners must agree to the assignment.").

**ANALYSIS**

In their Response to Williams' motion to dismiss, Byrne and Western Laundry admit that, for purposes of the Response, Williams has properly invoked federal subject-matter jurisdiction by raising a federal question in his Complaint pursuant to federal law, 26 U.S.C. § 7434. See Response at 1. Byrne and Western Laundry also admit that, for the purposes of the Response, the Court has supplemental jurisdiction over Williams' state-law fraud claim. See id. at 1-2. The Court agrees that it has original federal-question jurisdiction over Williams' statutory claim, and supplemental jurisdiction over his fraud claim, and will therefore confine its analysis to whether it has jurisdiction over Byrne's Counterclaim and whether it should allow the Defendants and/or B&W to file the Third Party Complaint as a Complaint in Intervention.

## I.   BYRNE'S CLAIMS CONSTITUTE A COMPULSORY COUNTERCLAIM UNDER RULE 13(a).

Williams has properly invoked the Court's original federal-question jurisdiction and may attach his fraud claim pursuant to rule 18. In response, Byrne has raised a Counterclaim styled as three state-law causes of action. Williams argues that Byrne's Counterclaim is a permissive counterclaim, because his claims do not relate to the contested Form 1099-MISC which is the subject of Williams' lawsuit, and are therefore not derived from the same transaction or occurrence. See Motion to Dismiss Memorandum at 8. Williams contends that, because Byrne's Counterclaim is permissive, the Court should dismiss Byrne's state-law claims because there are no independent grounds to support subject-matter jurisdiction over those claims; and because Williams' characterizes the claims in the Counterclaim as distinct from his principal claim, he argues that they cannot be

-17-

considered part of the same case and controversy, and thus, the Court does not have supplemental

jurisdiction over the Counterclaim. See id. at 10.  Because the Court believes that Williams' claims

cannot be compartmentalized in the manner he suggests, and because the Court finds that the same

evidence will support or refute both Williams' claim and Byrne's Counterclaim, the Court finds that

Byrne's Counterclaim is compulsory and that it has subject-matter jurisdiction over Byrne's state-law

claims.

Williams' represents that his lawsuit is premised on a limited set of facts all related to a single

occurrence -- the issuance of a fraudulent Form 1099-MISC.  He states that the only facts in dispute

are: (i) the amount of money Williams earned in 2005; (ii) the amount of money Byrne and Western

Laundry paid Williams in 2005; and (iii) the amount of money Byrne and Western Laundry reported

as paid to Williams on their 2005 tax forms.  See id. at 11.  Williams contends that the "defendant's

counterclaims would unduly complicate this otherwise relatively simple litigation."  Id.

Byrne does not dispute that Williams was paid $106,578.04 in 2005, or that Byrne and

Western Laundry issued Williams a Form 1099-MISC indicating $182,065.50 in compensation for

that year.  Byrne represents that the difference between the money paid to Williams and the money

reported, $75,487.46, "was used to extinguish [Williams'] debt, pursuant to a Partnership Agreement

he had with [] Byrne, for [Williams'] capital contribution to said Partnership agreement, which

[Williams] is well aware and agreed."  Answer ¶ 6, at 1-2.  Byrne asserts that: (i) Byrne and Williams

were legally associated in a partnership, B&W; (ii) in accordance with the partnership agreement

between them, Byrne and Williams were obliged to make certain capital contributions to B&W, and

Williams failed to make those contributions; (iii) Byrne withheld monies owed to Williams for work

Williams performed for Western Laundry to compensate for the contributions that Williams failed to

make to B&W; (iv) Williams had knowledge of the withholding and consented to it; and (v) Williams

knew, or should have known, that this withholding would be reported.  See Response at 5.

Williams counters that Byrne's Counterclaim has nothing to do with the tax form that is the

subject of Williams' Complaint.  See Plaintiff's Reply to Defendants' Response to Plaintiff's Rule

12(b)(1) Motion to Dismiss Defendants' Counterclaim and Third Party Complaint at 2, filed October

18, 2006 (Doc. 19)("Reply").  Williams characterizes any relationship between his claim and Byrne's

Counterclaim as  "attenuated." or "tangential."  Id.  Because the Court does not agree that Byrne's

Counterclaim can be classified in this manner, the Court disagrees with Williams' conclusion that the

Counterclaim is not compulsory and that the court does not have jurisdiction over it.

A counterclaim is compulsory if: (i) it involves the same issues of law and fact as the principal

claim; (ii) res judicata would bar the defendant from bringing a subsequent suit on the same claim;

(iii) it involves the same evidence as the principal claim; and, (iv) there is a logical relationship

between the principal claim and the counterclaim.  See FDIC v. Hulsey, 22 F.3d at 1487.  Of these

considerations, the Tenth Circuit gives special weight to the "same evidence" and "claim preclusion"

factors.  See id.

Williams incorrectly argues that Byrne's Counterclaim has nothing to do with the tax form

that is the subject of his Complaint.  To the contrary, these transactions and occurrences are closely

connected.  The facts and issues alleged in the Counterclaim all revolve around a common nucleus

of fact and law and depend on the resolution of three questions: (i) whether there was a valid

partnership agreement between Byrne and Williams; (ii) whether Williams breached his fiduciary duty

to the partnership; and (iii) if Williams did breach his duty, whether, pursuant to the agreement, Byrne

can withhold commissions Williams earned working for Western Laundry to satisfy Williams' debt

to B&W.  Because Byrne alleges that the money at issue -- the amount that differs on the Form 1099-MISC under which Williams is suing -- reflects capital contributions that Williams was obligated to make to B&W, these allegations share common questions of fact or law with the Complaint.

The second factor the Court must consider is whether res judicata would bar the claims in Byrne's Counterclaim if he were to bring them subsequent to the resolution of Williams' suit.  In the Tenth Circuit, claim preclusion applies when three elements are satisfied: (i) there must be a final judgment on the merits in an earlier action; (ii) the parties to the two actions must be the same or in privity; and (iii) the cause of action must be the same in the two suits.  See MACTEC, Inc. v. Gorelick, 427 F.3d 821, 831 (10th Cir. 2005).  Any suit that Byrne might bring against Williams in the future would satisfy the first two elements, and so the Court must evaluate only whether the cause of action would be the same in the two suits.

In FDIC v. Hulsey, the Tenth Circuit considered whether counterclaims brought in the form of state-law recoupment claims were compulsory in a loan foreclosure action the FDIC brought against the defendants.  See 22 F.3d at 1486-89.  The Tenth Circuit described the FDIC's claim as based on the defendant's guaranty of loan agreements, and the counterclaims as involving certain actions related to administering the loans and preserving the collateral securing the loans.  See id. at 1487.  Despite the variations in the legal theories underlying the principal claim and the counterclaim, the Tenth Circuit categorized the counterclaims as compulsory, because, in part, "[r]es judicata would bar [the defendants] from bringing a subsequent claim arising out of this debtor/creditor relationship." Id.

The claims in Byrne's Counterclaim are styled as a breach of fiduciary duty, a fraud claim, and a claim for prima facie tort derived from Williams' allegedly fraudulent sale of B&W assets to Kang

-20-

and his failure to properly capitalize B&W.  Just as in <u>FDIC v. Hulsey</u>, however, irrespective how Byrne styles his lawsuit against Williams, the cause of action would be the same.  Byrne seeks to offset any claim Williams brings against himself and Western Laundry by proving Williams owed B&W the money which Byrne withheld.  For Williams to properly defend himself in Byrne's lawsuit, he must raise the same issues.  Byrne's claims in this new suit could arise only out of his partnership relationship with Williams, the contours of which will have already been fully litigated. Consequently, the third element of the Tenth Circuit's test for res judicata is met, and Byrne would be precluded from bringing the claims in his Counterclaim in a separate lawsuit in the future.

Williams argues that, to resolve the Defendants' claims, the Court will have to engage in factfinding beyond that contemplated in Williams' original suit. <u>See</u> Motion to Dismiss Memorandum at 11.  Specifically, the Court will have to consider the parties' partnership agreement, their past course of business, and the various business transactions in which the parties have engaged.  <u>See</u> <u>id.</u> The Court believes that Williams underestimates the extent of evidence related to these issues that the Court would have to consider to resolve his principal claim, and disagrees that the evidence would be distinct from that which the Court would have to consider to resolve Byrne's Counterclaim.

These parties -- Williams, Byrnes, and B&W -- and the nature of their business relationship, are entangled, and the proof of Williams' claims and Byrne's defenses and Counterclaim will be the same or very similar.  The evidence establishing the contours of Williams' and Byrne's business relationship, the evidence establishing whether Williams was obligated to make capital contributions to B&W, and the evidence establishing whether he did make those contributions, will be the same that proves whether Byrne was entitled to withhold monies from Williams and thus, whether he filed a fraudulent Form 1099-MISC.  Similar evidence will be used to support all claims and defenses.  The

partnership agreement creating B&W, the parties' understanding of that agreement, and the past operation of B&W are all relevant and essential to the proper adjudication of all claims among these parties. "Where, as here, the same evidence will support or refute both the claim and counterclaim, the counterclaim will almost always be compulsory." Painter v. Harvey, 863 F.2d at 332.

Finally, there is a logical relationship between Williams' claims and Byrne's counterclaims. This conclusion is particularly strong given that Williams explicitly acknowledged the valid existence of B&W when he executed an agreement to sell certain dry cleaning and laundry equipment in the name of B&W and in his individual capacity. See Third Party Complaint, Exhibit B, Agreement to Sell Equipment (executed July 6, 2006)("Agreement to Sell Equipment"). If the partnership agreement between Byrne and Williams is valid, and Williams was purporting to sell certain assets to Kang, in part, on behalf of B&W, it is likely that some capitalization and profit sharing obligations derived from that sale. Accordingly, Byrne's claim that Williams breached fiduciary duties to B&W are logically related to his defense of Williams' assertion that he issued a fraudulent Form 1099-MISC, and likewise need to be before the Court for full adjudication.

There are common questions of law or fact, beyond a tangential relation, between Williams' claims and Byrne's Counterclaim. The three claims in Byrne's Counterclaim are related factually to Williams' federal tax form lawsuit in that, until the Court determines whether Williams breached his duty to the partnership and was obligated to make additional contributions, and whether Williams agreed to withholding in the event that he did not make the obligatory contributions, the Court cannot determine whether the Form 1099-MISC was incorrect. The three claims in the Counterclaim thus raises legal issues that are common with those that Williams' Complaint raises.

Williams cannot escape the risk he will be countersued for his allegedly wrongful deeds

-22-

knowing that he took assets and sold them without the consent of his partner, Byrnes.  The independent sale of assets without a proper accounting to the partnership could very well have caused Williams to become deficient in his capitalization obligations.  If these allegations are true, he exposed himself to the Counterclaim, and the claims therein are related to the transaction or occurrence that Williams' lawsuit is premised upon.  The Defendants can and must bring all claims that they have against Williams pursuant to rules 12 and 13, or they may be waived.

Byrne's Counterclaim satisfies each of the elements necessary for a counterclaim to be considered compulsory in the Tenth Circuit.  Moreover, because Byrne's Counterclaim is compulsory, the claims that make up the Counterclaim do not require an independent jurisdictional basis to be maintained before the Court.  Byrne's Counterclaim falls within the Court's supplemental jurisdiction.  The Court thus has jurisdiction over the Counterclaim.

Allowing the Counterclaim to proceed is not inconsistent with the policies underlying rule 13 or 28 U.S.C. § 1367.  The claims in Byrne's Counterclaim are not so unrelated -- factually and legally -- to Williams' claims that they would inflate and complicate this case to an intolerable degree. Indeed, because the evidence Byrne will need to defend against Williams' claim and assert his three claims in his Counterclaim is the same, the Court's result is consistent with the interests of judicial economy and the principles of federalism.  This case counsels that the Court exercise its supplemental jurisdiction and allow the claims to proceed.

Byrne's Counterclaim is properly before the Court.  The claims in Byrne's Counterclaim have no independent federal jurisdictional footing, but properly sit before the Court under supplemental jurisdiction.  The Court will thus exercise its jurisdiction and not dismiss the Defendants' Counterclaim.  The Court will not dismiss Byrne's Counterclaim for lack of jurisdiction and will deny

Williams' motion to dismiss the Counterclaim.

Alternatively, Byrne asks for leave to amend his Counterclaim. Byrne argues that, even if the Court is inclined to grant Williams' Motion to Dismiss, the Counterclaim and Third Party Complaint can be amended. Because the Court has denied the motion to dismiss the Counterclaim, there is no legal need for Byrne to amend his Counterclaim. Nevertheless, if he wishes to amend to clarify his allegations, he may file an amended Counterclaim within ten days of the entry of this Order.

## II.   THE COURT NEED NOT DECIDE WHETHER THE SETOFF EXCEPTION IS AVAILABLE IF THE COUNTERCLAIM IS PERMISSIVE.

Byrne maintains, in the alternative, that, at a minimum, his Counterclaim fits within the setoff exception to the general rule requiring permissive counterclaims to have independent federal jurisdictional grounds. See Response at 6. Byrne contends that, because the Counterclaim is in the nature of a setoff, even if the Court finds his pleading to involve permissive claims, independent jurisdiction is not required.[3]   See id.   Byrne contends that, even if the Court should find his Counterclaim is permissive, no independent jurisdictional grounds are necessary for the Court to accept jurisdiction.

Because the Court has concluded that Byrne's state-law claims against Williams are compulsory and not permissive, the Court need not dismiss the Counterclaim for lack of subject-matter jurisdiction. The Court also need not analyze whether the Court would have supplemental

---

[3]Byrne argues that the Court should consider both his Counterclaim, and B&W's Third Party Complaint as permissive. Although the Court need not decide whether the setoff exception to the general jurisdictional rules is available, it appears, to the extent that it exists, it applies only to counterclaims and not to third-party causes of action. Furthermore, because B&W is not a named party in Williams' lawsuit, any judgment in favor of Williams would not bind it, and, therefore, any claim that it would raise could only be one for affirmative relief and could not be characterized as a setoff. Accordingly, the Court's analysis will not address the setoff exception with respect to any third-party claim that B&W raises.

jurisdiction over any permissive counterclaims, nor need the Court decide whether, if the Court were to find Byrne's Counterclaim to be permissive, the setoff exception would support jurisdiction. Without ruling on the setoff exception, however, the Court has concerns whether Congress envisioned this exception under its rules and statutes, and whether, to the extent the exception existed, 28 U.S.C. § 1367 has supplanted it.

**III.   THE COURT NEED NOT DECIDE WHETHER B&W IS A PROPER THIRD-PARTY PLAINTIFF UNDER RULE 14.**

The Complaint Byrne filed on August 14, 2006 purported to be a Third Party Complaint on behalf of B&W.  See Third Party Complaint.  Byrne contended that he was the defending party for purposes of joinder of B&W, because he is a member of B&W with Williams, as evidenced by the Partnership Agreement.  See Response at 2.

In the Third Party Complaint, B&W alleged that Williams breached his fiduciary duties to B&W by selling partnership assets to a third party, Kang, and retaining B&W income without the consent of his partner, Byrne.  See Third Party Complaint ¶¶ 14, 15, at 3-4.  In the agreement Williams executed with Kang, Williams purports to sell laundry and dry cleaning equipment to Kang in the name of B&W, and in his individual capacity.  See Agreement to Sell Equipment at 1.

Byrne, a named Defendant in Williams' Complaint, not only answered and counterclaimed on Williams' suit, but also attempted to sue Williams on the same matters raised in his Counterclaim, through B&W, a partnership entity not named as a defendant in Williams' Complaint.  In their response to this motion, the Defendants contended that, because Byrne is a defending party pursuant to rule 14, he may assert a third-party complaint on behalf of the entity of which he and Williams are members.

Williams points out that he filed this suit on June 27, 2006 against Byrne and Western Laundry. Williams argues that Byrne and Western Laundry are the "defending parties" in this matter, and that neither of the defending parties attempted, under rule 14, to implead a non-party person who may be liable to the Defendants for Williams' claims and whose liability is derivative of the Defendants' liability. Williams contends that the Third Party Complaint, which, by the Defendants' admission, parrots Byrne's Counterclaim, see Response at 2, is not properly before the Court, because the putative plaintiff of the Third Party Complaint, B&W, was not properly impleaded or otherwise joined in this case. Williams maintains that B&W is not a proper third-party litigant within the meaning of rule 14, and that this rule does not allow Byrne to double-up his Counterclaim by attempting to piggy-back the purported Third Party Complaint against Williams into this suit.

Williams also argues that, even if the Court were to view Williams as a "defending party" by virtue of Byrne's Counterclaim, B&W was still improperly impleaded. It is not Williams who seeks to bring B&W into the lawsuit; Williams, upon being served with Byrne's Counterclaim, did not sue B&W under rule 14(b). Rather, it was Byrne who brought suit in B&W's name against Williams by parroting his own Counterclaim. Williams argues that Byrne did not properly use rule 14 and that the Court should dismiss the Third-Party Complaint.

In his motion, Williams argued that the requirements that a third-party plaintiff must satisfy under rule 14 make it clear that the rule does not contemplate this situation. Byrne has not attempted to implead the partnership as a third-party defendant that could be liable for Byrne's actions. Nor has Williams impleaded the partnership upon being served with Byrne's Counterclaim.

In his motion, Williams argued that Byrne and Western Laundry misread rule 14's parameters. Williams argued that the manner in which the Defendants attempt to interpose the partnership into

-26-

this lawsuit is procedurally defective and ultimately unnecessary.  Moreover, Williams argued that

the Third Party Complaint suffered from jurisdictional issues different from those that the

Counterclaim experienced.

Because B&W has voluntarily dismissed its Third Party Complaint, the Court need not decide

whether to dismiss the Third Party Complaint or whether the Third Party Complaint was improper.

The Court need not exercise jurisdiction over the Third Party Complaint.   As such, the Court will

dismiss Williams' motion to dismiss the Third Party Complaint filed on B&W's behalf as moot.

## IV.   B&W IS NOT A PROPER INTERVENING PARTY UNDER RULE 24.

In their Response, the Defendants stated that, even if the Court agrees with Williams that

B&W may not be joined in the litigation under rule 14, the Court should grant B&W leave to entitle

its pleading a Complaint in Intervention consistent with rule 24.  B&W has not indicated whether this

request is moot.  In any case, to the extent that the Defendants wish to have B&W intervene in this

lawsuit under rule 24, their proposed Complaint in Intervention is improper.  The Court will thus

deny this request.

A third-party wishing to intervene of right must show that: (i) its application is timely; (ii) its

interest relates to the property or transaction that is the subject of the primary action; (iii)  the

disposition of the action without the third party's participation may impair its ability to subsequently

protect its interest; and (iv) existing parties do not adequately represent its interest.  See Utahns for

Better Transp. v U.S. Dep't of Transp., 295 F.3d at 1115.  The Court need not address the first three

elements of this test, because Byrne -- an existing party who has already answered Williams'

Complaint and has brought a Counterclaim -- admits that his interest is identical to that of B&W.  The

Defendants admit that B&W's dismissed Third Party Complaint "parrots Defendant Byrne's

Counterclaim because the claims of Byrne and B&W are identical against Plaintiff Williams." Response at 2.  As such, B&W's interest is already represented in this lawsuit.  Assuming that B&W has an interest in this case, Byrne adequately represents the partnership's interest; Byrne's Counterclaim, by his own admission, matches almost to the letter, the claim raised in the partnership's Third Party Complaint.  Thus, the partnership's presence in this suit is unnecessary, and the Court will deny the request, to the extent it remains, that B&W be allowed to file a Complaint in Intervention on its behalf.

Nor will the Court grant B&W the right to effect a permissive intervention.  In exercising its discretion whether to allow a permissive intervention, the Court must consider "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Fed. R. Civ. P. 24(b).  In addition, the fact that existing parties adequately represent a third-party applicant's interests is a factor that counsels against permissive intervention.  See Arney v. Finney, 967 F.2d at 421.  It is unnecessary for B&W to intervene in this lawsuit.  Nor does the Court believe that B&W's insertion will facilitate the resolution of the parties claims.  B&W's claims are duplicative, its proposed Complaint in Intervention raises no additional legal arguments or factual allegations for the Court to consider, and no independent counsel has made an appearance on its behalf.  Judicial economy does not favor the maintenance of the third-party claims, which are merely the existing Defendants' claims repeated, in this federal lawsuit.  The Court will not allow the Defendants to amend B&W's Third Party Complaint to allow B&W to state a claim in intervention, because Byrne's presence in the lawsuit already represents any interest that B&W claims against Williams.

**V.      THE COURT NEED NOT DECIDE WHETHER BYRNE HAS THE CAPACITY TO
BRING SUIT AGAINST WILLIAMS ON BEHALF OF B&W.**

Williams argues that B&W has no standing to bring claims against him, because, under New
Mexico law, "a partner may not sue alone on a cause of action belonging to a partnership."  Motion
to Dismiss Memorandum at 5.  Williams argues that both he and Byrne together would have to bring
any suit on behalf of the partnership, forcing Williams to sue himself.  See id.  Although Williams
concedes that partnerships have capacity to sue and be sued, he contends that, because the Third
Party Complaint was not brought, and the proposed Complaint in Intervention would not be brought,
in the names of all partners of B&W, the entity does not have capacity to sue in this matter.  See id.
at 4-5.

Byrne and Western Laundry contend that Williams is estopped from arguing that B&W has
no standing to sue, because Williams prepared and executed the Agreement to Sell Equipment in the
name of B&W and in his individual capacity.  See Response at 7.  Despite Williams' concession that
partnerships are legal entities capable of bringing suit, see Motion to Dismiss Memorandum at 4, the
Defendants appear to understand Williams' argument as an assertion that, because B&W is a
partnership, and not an LLC, it does not have the capacity to sue.  Byrne and Western Laundry
counter, without explanation, that Williams implicitly recognized B&W as an LLC when he entered
into the Ageement to Sell Equipment.  See Response at 8.  Consistent with that understanding, Byrne
and Western Laundry contend in their Response that dismissal of the Third Party Complaint, or denial
of B&W's intervention, for a lack of standing cannot be reconciled with Williams' acknowledgment
of the existence of a valid LLC, and would reward Williams for his unclean hands or wrongful deeds.
See id.

Williams counters that he "is not estopped from raising the standing argument, and his interaction with the partnership entity is immaterial to the standing issue." Reply at 8. He argues that Byrne and Western Laundry ignore the relevant law in New Mexico regarding a partnership's capacity to sue. See id. at 8-9.

Because B&W has dismissed its Third Party Complaint, and because the Court has denied the Defendants' request to file the Third Party Complaint as a Complaint in Intervention, the Court need not address whether Byrne has standing to bring suit against Williams on behalf of B&W. This ruling does not mean, however, that the Partnership Agreement, and the rights and obligations flowing from it, are immaterial to this case. Williams, in his individual capacity, allegedly recognized the existence of B&W as of July 6, 2006, when he purported to sell partnership assets to a third-party without Byrne's consent. The partnership agreement will be essential to resolving the parties' rights and obligations.

Even though the Court will not allow B&W to be a party to this suit, the legal doctrines encompassing the principle that all claims among all parties ought to be brought in one suit will be fostered as much as the federal rules and jurisdictional principles permit. To allow the Counterclaim to proceed will avoid multiplicity of suits, duplicative and expensive discovery, and will foster judicial economy.

**IT IS ORDERED** that the Plaintiff's Rule 12(b)(1) Motion to Dismiss Defendants' Counterclaim and Third Party Complaint of "Byrne & Williams, LLC," is granted in part, dismissed as moot in part, and denied in part. The Court will deny the Motion to Dismiss the Counterclaim raised in Defendant Anthony Byrne's Answer to the Plaintiff's Complaint. The Court will dismiss as moot Williams' motion to dismiss to the extent it requests the Court to dismiss Byrne & Williams,

-30-

LLC's Third Party Complaint.  The Court will grant Byrne leave to amend his Counterclaim within ten days of the entry of this order, but will deny the Third-Party Plaintiff's request for leave to amend its pleading and file that pleading as a Complaint in Intervention.


_____
UNITED STATES DISTRICT JUDGE


*Counsel:*

Mark D. Jarmie
Jarmie & Associates
Albuquerque, New Mexico

   *Attorneys for the Plaintiff*

John A.Budagher
Albuquerque, New Mexico

   *Attorney for the Defendants*